IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NEW HAMPSHIRE INSURANCE, COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:09-cv-730-MEF |
| v. | ) | |
| | ) | |
| FLOWERS INSURANCE AGENCY, LLC, *et al.*, | ) | (WO – DO NOT PUBLISH) |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment, (Doc. # 65), filed on February 1, 2011 by Defendants Flowers Insurance Agency, LLC ("Flowers") and Hugh "Tripp" Wheelless ("Wheelless") (collectively "Defendants"). The dispute in this case stems from Plaintiff New Hampshire Insurance Company's ("NHIC") insurance coverage of M/Y TAR BABY ("the Vessel"), a 61-foot yacht owned by Blue Water Off Shore, LLC ("Blue Water"). The Vessel ran aground and partially sank on August 1, 2007. Alabama Marine Police found that the captain of the Vessel, James Cooper ("Cooper"), had a blood alcohol level of .14 and arrested him for boating under the influence. The insurance policy at issue contained lack of reasonable care and criminal acts exclusions that, according to NHIC, would have prevented it from paying out for the loss based on the alleged intoxication of Cooper. However, Blue Water never received a copy of the insurance policy at issue and successfully prevailed in a breach of contract action against NHIC. NHIC now brings four state-law claims alleging that Defendants

agreed to deliver the insurance policy to Blue Water but failed to do so—namely, breach of contract (Count I), negligence (Count II), and misrepresentation (Counts III and IV). (Doc. # 67, Third Am. Compl.).[1]  Defendants now seek summary judgment on the grounds that NHIC cannot establish prima facie cases for breach of contract, negligence, or misrepresentation.  After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the Court finds that Defendants' Motion for Summary Judgment, (Doc. # 65), is due to be DENIED.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332, based upon the parties' diversity of citizenship[2] and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.  The parties contest neither personal jurisdiction nor venue and the Court finds adequate grounds alleged to support both personal jurisdiction and venue.

---

[1]  Defendants' motion for summary judgment was based on NHIC's Second Amended Complaint. (*See* Doc. # 66, at 1 (citing Doc. # 35, Second Am. Compl.)). On January 28, 2011, this Court ordered NHIC to further amend the complaint to include the citizenship of all members composing the LLC Defendant, Flowers, in order to establish diversity jurisdiction.  (Doc. # 62). Thus, the Third Amended Complaint is identical to the Second Amended Complaint except for additional factual allegations in paragraphs 2 and 3, which establish the citizenship of the LLC Defendant. (*See* Doc. # 67, Third Am. Compl.).

[2]  For purposes of § 1332(a), NHIC is a citizen of the Pennsylvania, its state of incorporation, and New York, the state where it maintains its principal place of business.  As a limited liability company, Flowers is a citizen of all states in which its members are citizens.  *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021–22 (11th Cir. 2004).  Flowers Holding Company, a limited liability company, owns 100% of Flowers.  In turn, Wheelless and Shane Sinquefield each own 50% of Flowers Holding Company, and both are citizens of Alabama. Thus, both Defendants—Flowers and Wheellless—are citizens of Alabama.

## FACTS AND PROCEDURAL HISTORY

### I.    Facts

The dispute in the instant action stems from a Yacht Policy of Insurance, Policy No. YM 868-44-60 (the "Policy"), issued by NHIC covering the Vessel from February 13, 2007 to February 13, 2008.  (Doc. # 67, Third Am. Compl. ¶ 10).  The Vessel was owned by Blue Water, which in turn is wholly owned by John Harper ("Harper").  (Doc. # 75 Ex. 2, Harper Depo. 70:19–71:10).  Blue Water contacted Flowers, through its employee Wheelless, regarding obtaining insurance for the Vessel.  (Doc. # 66, at 2; Doc. # 74, at 2).  Wheelless' job was to ensure that Harper got the best policy available for the Vessel.  (Doc. # 75 Ex. 3, Flowers Depo. 83:12–16).[3]  Wheelless and Flowers dealt with Bill Hodgens ("Hodgens") of W.R. Hodgens Marine Insurance Agency.  (Doc. # 66, at 2; Doc. # 74, at 2).  Hodgens has a contractual agreement permitting it to sell NHIC insurance policies through its underwriter, Maritime General Agency ("MGA").  (Doc. # 66, at 2; Doc. # 74, at 2–3).  Flowers "serv[ed] as a liaison between Hodgens and Harper."  (Doc. # 66, at 2); (see also Doc. # 74, at 3 ("It is undisputed that . . . Hodgens

---

[3]  The deposition at issue was actually given by Wheelless pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, which permits a party to name in its notice or subpoena "a public or private corporation, a partnership, an association, a governmental agency, or other entity" as the deponent.  Fed. R. Civ. P. 30(b)(6).  The named organization then designates "one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."  Id. Because the organization at issue here, Flowers, designated Wheelless as the person who would testify on its behalf, this deposition will be referred to as the Flowers Deposition.

Similarly, Susan Smith ("Smith") testified as the corporate representative of NHIC, and her deposition will be referred to as the NHIC Deposition.

had no contact whatsoever with . . . Harper or [Blue Water].")).  According to Hodgens, when Wheelless called him regarding procuring insurance for the Vessel, Wheelless stated that "one of [Flowers'] major clients that they did all their insurance for needed boat insurance for a large boat."  (Doc. # 75 Ex. 5, Hodgins Depo. at 75:12–14).  On February 13, 2007, NHIC's underwriter, MGA, issued the Policy for the Vessel.

**A.    The February 13, 2007 Delivery of the Policy to Flowers after Flowers Requested a Binder**

The following facts all also occurred on February 13, 2007.  Donna Phillips ("Phillips"), a customer service representative at Flowers, faxed Hodgens requesting a binder for the Policy.  (Doc. # 78 Ex. 1, at 4, Fax from Phillips to Hodgens (February 13, 2007)).  In response, Hodgens emailed Phillips stating that he "will submit this ASAP and request the binder ASAP."  (*Id.* at 6, Email from Hodgens to Phillips (February 13, 2007)).  Hodgens faxed Mike Terrier ("Terrier") with NHIC requesting a binder for the Policy.  (*Id.* at 5, Fax from Hodgens to Terrier (February 13, 2007)).  Terrier then emailed Hodgins back with the Policy attached and asked him to send a copy to Blue Water.  (*Id.* at 3, Email from Terrier to Hodgens (February 13, 2007)).  Hodgins forwarded Terrier's email to Phillips and stated "Please find attached the binder for Mr. Harper."  (Doc. # 78 Ex. 2, at 28, Email from Hodgens to Phillips (February 13, 2007)).  The text from Terrier's email indicating that he is sending the Policy is not contained in the email forwarded to Phillips; however the subject line of the email states "FW: YM868ff60 - Yacht Policy - John Harper."  (*Id.*).  Furthermore, the parties agree that the attachment

4

actually contained the Policy, including the declaration page, endorsements, and Policy language.

### B.    Changing the Policy Mailing Address per Flowers' Request on February 14, 2007

On the morning of the following day, February 14, 2007, Phillips sent an email to Hodgens containing the following:

> We just found out the boat was purchased under Blue Water Off Shore, LLC[.] [W]ould you please amend the policy to reflect the correct name?  Also Trip has asked that all correspondence go through the office here, so please endorse the policy mailing and billing address to read C/O Flowers Insurance Agency, LLC P.O. Box 368 Dothan, AL 36302.  We handle all this clients[4] [sic] business and personal insurance and this is how the client prefers his mail.

(*Id.* at 14, Email from Phillips to Hodgens (February 14, 2007)).[5]  However, Wheelless admitted that the statement that Flowers handled all of the Harper's business and personal insurance was false.  (Doc. # 75 Ex. 3, Flowers Depo. 134:19–135:2).  Indeed, he testified that Flowers neither handled all of Harper's business insurance nor all of his personal insurance.  (*Id.* 135:6–13).  Furthermore, Wheelless admitted that it was untruthful to state that the client preferred his mail to go through Flowers.  (*Id.* 135:14–17).

---

[4]  In her deposition, Phillips clarified that the "client" being referred to was Harper.  (Doc. # 75 Ex. 4, Phillips Depo. 94:3–10).

[5]  Defendants rely upon this email for the proposition that Phillips "requested an amended binder because the original 'binder' Hodgens sent contained Harper's name, as opposed to Blue Water's name, as the named insured."  (Doc. # 78, at 2).  However, the email from Phillips to Hodgens clearly references "amend[ing] *the policy* to reflect the correct name"—not amending the binder.  (Doc. # 78 Ex. 2, at 14, Email from Phillips to Hodgens (February 14, 2007) (emphasis added)).

Wheelless also admitted that neither Harper nor anyone else at Blue Water ever requested changing the Policy's mailing and billing address. (*Id.* 132:7–13).[6]  Rather, Wheelless testified that his intention was to have all billing sent through Flowers, not to change the Policy's mailing address to Flowers' address. (*Id.* 131:16–17).  While Wheelless testified that he was unaware that this email was sent until after August 1, 2007, (*id.* 135:18–20), Phillips testified that Wheelless asked her to make the request changing the mailing and billing address. (Doc. # 75 Ex. 4, Phillips Depo. 88:7–21, 89:19–21, 91:6–10, 92:14–20, 93:18–21).[7]  She further admitted that she did nothing to confirm the accuracy of the statements contained in the February 14, 2007 email. (*Id.* 99:14–20).

In response to the February 14, 2007 email from Phillips, Hodgens forwarded the email to Terrier, asking him to review it and let him know if MGA had any problems with

---

[6] Harper himself confirmed that neither he nor anyone else at Blue Water authorized Flowers to change the policy mailing address to its own address. (Doc. # 66 Ex. 1, Harper Depo. 160:14–161:2).

[7] On May 2, 2007, Phillips sent an internal email to a co-employee, Shannon Boudreax ("Boudreax"), confirming that all of Blue Water's correspondence was to be sent to Flowers and then forwarded to Blue Water and that the reason was so that Flowers could charge an agency fee. (Doc. # 78 Ex. 2, at 17, Email from Phillips to Boudreax (May 2, 2007) ("Trip wants everything to come here and then we mail from here to the client.  If that doesn't make since [sic], let me know.  He wants us to be involved with the renewals so we can charge an agency fee.")).  Phillips testified that the statement in her February 14, 2007 email to Hodgens requesting a change of address to Flowers' P.O. Box was made, at least in part, so that Flowers could charge an agency fee as well as a similar fee on each annual policy renewal. (Doc. # 75 Ex. 4, Phillips Depo. 106:14–107:1).  Wheelless confirmed that he told Phillips that he wanted Flowers to be involved with the renewals so that Flowers could charge an agency fee. (Doc. # 66 Ex. 3, Flowers Depo. 143:9–14).

it.  (Doc. # 75 Ex. 5, Hodgens Depo. 100:19–25).  Terrier asked Hodgens to confirm that

Flowers agreed to have the mail forwarded there because it would be "assuming some E

& O exposure."  (*Id.* 101:24–102:5).  Hodgens confirmed to MGA that Flowers itself had

made the request, and the mailing address was changed to Flowers' P.O. Box.  (*Id.*

102:6–13).  Hodgens then sent Phillips an email that same day which contained a one-

page attachment—namely, an endorsement for Blue Water c/o Harper that had the

purpose of amending the name of the insured and changing the address to Flowers' P.O.

Box.  (Doc. # 78 Ex. 2, at 25, Email from Hodgens to Phillips (February 14, 2007 2:00

P.M.)).[8]

### C.   NHIC's February 14, 2007 Statement that the Welcome Letter and First Bill Will be Sent to Blue Water

Also on February 14, 2007, Hodgens emailed Phillips stating the following:

"Please see attached re the Harper billing.looks like the first invoice and welcome letter

have already gone out to Mr. Harper's address..the  subsequent billing will go [to] your

agency...They usually send these out the day coverage is bound..."  (*Id.* at 21, Email from

Hodgens to Phillips (February 14, 2007 2:01 P.M.) (errors in original)).  The "attached"

reference was an email to upon which Hodgens CC'd which stated that the Policy "was

already fed to Direct Bill Services for billing.  The first bill and Welcome letter will go to

---

[8]  Defendants claim that this one-page attachment is a binder.  (Doc. # 78, at 3).

the old address." (*Id.* at 22, Email from Unknown Sender to Suzan Anderson,[9] CC: Hodgens, (February 14, 2007)).  Phillips testified that she believed the email indicated that the Policy had already been sent to Blue Water because it stated that a welcome letter had already been sent and because Flowers sends a welcome letter when a policy is sent out.  (Doc. # 66 Ex. 8, Phillips Depo. 122:3–23).

### D.    Hodgens Allegedly Mails a Copy of the Policy to Flowers on February 15, 2007

Hodgens testified that, one day later on February 15, 2007, he mailed a hard copy of the Policy to Flowers at the P.O. Box address provided (Doc. # 75 Ex. 5, Hodgens Depo. 95:13–16, 104:15–106:2).  Although Terrier told Hodgens to send a copy of the Policy to Blue Water on February 13, 2007, Hodgens testified that he would have followed those instructions if Flowers had not directed him the very next day to send correspondence to its P.O. Box.  (*Id.* 105:8–22).

### E.    Harper Never Receives a Copy of the Policy

Harper testified that he never received a copy the Policy until after the August 1, 2007 accident and was unaware that the Policy contained exclusions for lack of reasonable care and criminal acts.[10]  (Doc. # 75 Ex. 2, Harper Depo. 170:22–171:5).

---

[9]  Suzan Anderson is a clerical support person at MGA.  (Doc. # 66 Ex. 9, Terrier Depo. 37:15–17).

[10]  Specifically, the Policy states the exclusions as follows:

10.  CAUSES OF LOSS THAT ARE NOT COVERED:
We shall not cover any loss or damage arising out of:

Harper further testified that if he had been aware of such exclusions he would have "reviewed [them], compared [the Policy] to [his] current policy, and . . . would have canceled the [P]olicy or told them to cancel it or amend it" because "[i]t didn't give [him] the coverage that [he] needed." (*Id.* 171:14–17, 175:22–23). Indeed, Harper stated that he would have not paid the premiums and rejected the Policy outright had he known of the exclusions. (175:13–17, 177:5–8).

Despite Harper's testimony, Defendants contend that, at the time the Policy was issued, Harper had no other options but to take the Policy, including the exclusions contained therein. (Doc. # 66, at 8). Wheeless testified that he went through various sources but that no one could provide coverage because of the size of the Vessel and the geographic area that it was going to cover. (Doc. # 66 Ex. 3, Flowers Depo. 185:19–186:8). Indeed, Wheeless testified that someone had already tried to insure the Vessel with another insurance agency, Travelers, and that he knew this because his submission was rejected for two reasons: a prior agent had already made the submission for the Vessel and Travelers did not write insurance policies for the locality the Vessel

---

      (a) Any intentional misuse or misconduct, or lack of reasonable care or due
          diligence, in the operation or maintenance of your yacht or trailer;
                    . . .
      (e) Any willful misconduct, criminal, or dishonest act by you, your
          employees, or person to whom you entrust your yacht; . . .

(Doc. # 66 Ex. 7, at 14, The Policy).

was to be used in.  (*Id.* 53:14–54:13).[11]  Finally, Wheelless testified that he believed that the Policy through NHIC was the only option he had to present to Harper.  (*Id.* 109:10–18).

NHIC, on the other hand, points out that Harper testified that he was aware of better policies that were available.  (Doc. # 75 Ex. 2, Harper Depo. 177:13–16; *see also* 179:1–10 (stating that he had checked with friends who had vessels in the area and that another insurance company, AIG, "had different forms that didn't have those exclusions")).  NHIC also emphasizes the testimony of Greenberry Bush Taylor ("Taylor"), NHIC's marine insurance expert, who testified that it would not have been difficult to find coverage for a yacht such as the Vessel in the early part of 2007.  (Doc. # 75 Ex. 10, Taylor Depo. 87:18–22).  Taylor further stated that there were "half a dozen markets that could have written this account" and that he thought "the limits were the problem, not the geographic location."  (*Id.* 120:11–17).  After having reviewed Harper's deposition, Taylor further clarified that he agreed with his testimony "that there were other policies available to cover the subject vessel in February of 2007 that did not include the criminal acts and reasonable care exclusions found in the . . . Policy."  (Doc. # 75 Ex. 11, Taylor Aff. at 1, ¶ 5).

F.     **The August, 1, 2007 Sinking of the Vessel and Subsequent Litigation**

---

[11]  Defendant points out that Travelers insured Harper's other boat and that this other policy contained a criminal acts exclusion which stated, "We do not cover any loss, injury, damage or expenses caused by dishonest or illegal act of any covered person, regardless of whether or not such person is convicted of such act by a criminal court."

On August 1, 2007, the Vessel struck a submerged jetty and was rendered a total loss.  (Doc. # 75 Ex. 2, Harper Depo. 194:15–195:12).  Cooper, the captain of the Vessel, was found to have a blood alcohol level of .14 and was arrested for boating under the influence.  (*Id.* 200:15–23, 205:8–17).  A salvage service operating under the "SEA TOW" franchise ("Sea Tow") towed the Vessel from the scene.  (Doc. # 67, Third Am. Compl. ¶ 20).

Following the loss, Blue Water made a claim for benefits under the Policy.  (Doc. # 75 Ex. 1, Smith Aff. at 1, ¶ 3).  NHIC instituted a declaratory judgment action against Blue Water, *New Hampshire Insurance Company v. Blue Water Off Shore, LLC*, Case No. 1:07-cv-754, in the United States District Court for the Southern District of Alabama seeking declaration that coverage for the loss was excluded under the express terms of the policy ("the declaratory judgment action").  (*Id.* at 1, ¶¶ 3–4).  As previously stated, the Policy contained exclusions "for losses arising from the lack of reasonable care or due diligence in the operation of the Vessel" and "for losses arising from any willful misconduct or criminal acts."  (*Id.* at 1–2, ¶ 4).  Blue Water asserted a defense of estoppel, arguing that NHIC was estopped from denying coverage based upon the exclusions because NHIC failed to deliver the Policy to Blue Water, and filed a counter-claim alleging breach of contract and bad faith.  (Doc. # 67, Third Am. Compl. ¶ 28; Doc. # 75 Ex. 1, Smith Aff. Attach. 3, at 5).  A jury returned a general verdict in favor of Blue Water on its breach of contract claim and awarded damages in the amount of $1.75

million, plus costs in the amount of approximately $7,300.00, plus interest.  (Doc. # 75

Ex. 9, NHIC Depo. 124:22–125:8).  NHIC appealed the jury verdict, and the case is now

pending before the Eleventh Circuit.  NHIC alleges that it has incurred fees and costs in

the declaratory judgment action in excess of $470,000.00 as of December of 2010.  (Doc.

# 75 Ex. 1, Smith Aff. ¶ 8).

Additionally, Sea Tow, the salvage service, also filed a lawsuit against Blue Water,

*Aquanaut Towing and Salvage, Inc. d/b/a Sea Tow v. The M/Y TAR BABY and Blue*

*Water Offshore, LLC*, Case No. 3:08-cv-502-LAC, in the United States District Court for

the Northern District of Florida ("the salvage action").  (*Id.* ¶ 9).  NHIC defended Blue

Water's interests under a reservation of rights.  (*Id.*).  The court in the salvage action

determined that Sea Tow was entitled to a salvage award in the amount of $25,000.00 and

rendered judgment against Blue Water.  (*Id.* ¶ 10).  NHIC satisfied judgment against Blue

Water by paying $ 27,379.03 to Sea Tow.  (*Id.*).  NHIC alleges that it incurred substantial

fees and costs in defending the salvage action, which it has paid in the amount of

$57,599.50.  (*Id.*).

## II.    Procedural History

NHIC filed the instant action on July 31, 2009.  (Doc. # 1).  After amending the

complaint several times, NHIC now brings four claims against the Defendants based upon

their failure to deliver the policy to Blue Water: (1) breach of contract (Count I); (2)

negligence (Count II); and misrepresentation (Counts III and IV).  On February 1, 2011,

12

Defendants filed the pending motion for summary judgment.  (Doc. # 65).

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[12]  *Celotex*. 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–23; *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993) ("For issues, however, on which the non-movant would bear the burden of proof at trial, . . . '[t]he moving party may simply show[]—that is, point[] out to the

---

[12] "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" *Lewis*, 908 F. Supp. at 943–44. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case."  *Id.* at 944 (citing *Anderson*, 477 U.S. at 248).

13

district court—that there is an absence of evidence to support the non-moving party's case.'") (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991)).

Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no

14

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## ANALYSIS

As previously stated, NHIC brings four state-law claims against Defendants: (1) breach of contract (Count I); (2) negligence (Count II); and misrepresentation (Counts III and IV). For each of these claims, Defendants argue that Plaintiff cannot establish the elements of a cause of action. Defendants bring one argument that applies to all of the claims—namely, that Plaintiff cannot prove that Defendant's actions, or lack thereof, caused NHIC's damages. Because this argument applies to all of the claims, this Court will consider it first, and then examine the remaining arguments regarding establishing prima facie cases for the various claims. Finally, Defendants further argue that NHIC is not entitled to attorney's fees as part of its damages. This argument will be considered last.

## I.    Causation

As will be discussed below, each of the NHIC's claims require it to prove that Defendants' actions, or lack thereof, caused NHIC's alleged damages. Defendants contend that NHIC cannot make such a showing. (Doc. # 66, at 15 & n. 2; Doc. # 78, at 5 & n. 3). NHIC's theory of damages for all four counts is that its reliance on the alleged misrepresentations "precluded [NHIC] from relying upon and enforcing the exclusions in the Policy which would have otherwise precluded coverage for the subject casualty."

15

(Doc. # 67, Third Am. Compl. ¶¶ 45(a) (Count I), 50(a) (Count II),  57(a) (Count III),

64(a) (Count IV)).   Alabama law states that an insurer who fails to deliver a copy of the

insurance policy to the insured "may be estopped from asserting conditions of, or

exclusions from, coverage where . . . [the] insured is prejudiced by the insurer's failure

[to delivery the policy]." *Brown Mach. Works & Supply Co. v. Ins. Co. of. N. Am.*, 659

So. 2d 51, 61 (Ala. 1995).   Thus, Flowers argues that the only way in which NHIC's

reliance caused the damages alleged is if NHIC was estopped from asserting the

exclusions *because the insured was prejudiced* by the failure to deliver.  (Doc. # 66, at

15–16).   Flowers contends that Blue Water was not prejudiced by the failure to deliver the

Policy—and, therefore, NHIC could have successfully asserted the exclusions—because

the Policy with NHIC "was the only option [Blue Water] had."  (*Id.* at 15).[13]

       This argument fails because it rests on the flawed premise that an insured is not

prejudiced at all when there are no other options for insurance coverage.  However,

regardless of the existence of other options, prejudice can occur where the insured has no

actual or constructive knowledge of the exclusions.[14]   *Nance v. Southerland*, No.

2080746, 2010 Ala. Civ. App. LEXIS 33, at *25 (Ala. Civ. App. Jan. 29, 2010)

("Prejudice *obviously* may occur when an insured has no actual or constructive

---

       [13]  Defendants also contend that these arguments for causation apply to all of the claims.
(Doc. # 66, at 15 n. 2).

       [14]  Logically, this concept of prejudice makes sense because an insured cannot take action to
avoid the application of exclusions that he does not and should not know exist.

knowledge of a limitation on, or exclusion from, coverage until delivery of the policy.")

(emphasis added) (citing *Ex parte Clarke*, 728 So. 2d 135 (Ala. 1998)); *see generally*

*Danforth v. Government Emps. Ins. Co.*, 282 Ga. App. 421, 426 (Ga. Ct. App. 2006)

("When an insurance company fails to mail or deliver the insurance policy to the insured

within a reasonable amount of time after its issuance, the insurance company may still

rely on exclusions in the policy *of which the insured otherwise had notice*.") (emphasis

added) (citations omitted); *Kozlik v. Gulf Ins. Co.*, 2003 WI App. 251, 268 (Wis. Ct. App.

2003) ("We therefore hold that in insurer may not deny coverage based on limitations or

exclusions in a policy, even if clearly stated, *where the insured was not otherwise*

*informed of such provisions*.") (emphasis added).  Here, there is sufficient evidence

before this Court that Blue Water had no knowledge, either actual or constructive, of the

exclusions in the Policy and that, therefore, NHIC would have been estopped from

denying coverage based upon the exclusions.  Thus, a reasonable jury could find that

NHIC's reliance in sending the policy only to Flowers prejudiced Blue Water, thereby

estopping NHIC from applying the exclusions and denying coverage.  For this reason,

Flowers is not entitled to judgment as a matter of law based on the lack of causation.

Even assuming NHIC were required to prove that Blue Water could have gotten a

different insurance policy in order to establish lack of prejudice and, thus, causation, there

is sufficient evidence before the Court by which a reasonable jury could find that such

options were available. Taylor, NHIC's marine insurance expert, specifically testified that

there were "half a dozen markets that could have written this account" in early 2007.

(Doc. # 75 Ex. 10, Taylor Depo. 120:11–17).   He further clarified, after reviewing

Harper's testimony, "that there were other policies available to cover the subject vessel in

February of 2007 that did not include the criminal acts and reasonable care exclusions

found in the . . . Policy."  (Doc. # 75 Ex. 11, Taylor Aff. at 1, ¶ 5).  Flowers argues that

Taylor's testimony is conclusory and therefore inadmissible, this Court disagrees.  It is

true that "a party may not avoid summary judgment solely on the basis of an expert's

opinion that fails to provide specific facts from the record to support its conclusory

allegations." *Evers v. General Motors*, 770 F.2d 984, 986 (11th Cir. 1994).

      Here, however, Taylor specifically testified that he was aware of the size of the

Vessel, the city out of which it was based, the geographic location where it would travel,

the limits sought on a policy covering it, and that Harper desired coverage that did not

include reasonable care and criminal acts exclusions.  Taylor testified that, in his expert

opinion, he would have been able to insure the Vessel in February of 2007 as Harper

wanted without the exclusions.  This is not a mere conclusory opinion, but rather an

expert opinion given based upon the specific facts from the record.  Flowers argues that

Taylor failed to state that such policies would have covered this loss; however, a

reasonable inference from his testimony is that he was referring to comparable policies

that would have covered the loss and that would not have contained the exclusions.

*Anderson*, 477 U.S. at 255 (holding that a court ruling on a summary judgment motion

must take all justifiable inferences from the facts in favor of the non-movant).  For this additional reason, Flowers is not entitled to judgment as a matter of law on any of the claims based on the lack of causation.

## II.     The Misrepresentation Claims

Before examining the misrepresentation claims upon the merits, this Court must first explain the similarities and differences between the two counts.  Count III is a misrepresentation claim against Flowers relating to the explicit representations in Phillips' February 14, 2007 email—namely that Flowers "handle[s] all of this clients [sic] business and personal insurance" and that "this is how the client prefers his mail."  (Doc. # 67, Third Am. Compl. ¶¶ 51–58; *see also* Doc. # 74, at 30 (stating that the email "contains two explicit representations – (1) that Flowers handles all of Harper's business and personal insurance and (2) that Harper had given instructions to Flowers that his insurance policies were to be routed through Flowers").[15]  Count IV, on the other hand, contains misrepresentation claims against both Defendants relating to an "implicit representation that . . . that Flowers was the authorized agent for receiving the Policy." (Doc. # 74, at 30; *see also* Doc. # 67, Third Am. Compl. ¶ 60 (stating that this claim is based upon representations "that Flowers was the agent of Blue Water for the purpose of procuring the Policy, including taking delivery of the Policy for Blue Water")).  Count IV

---

[15] This count relies upon the theory of respondeat superior—*i.e.* that Flowers is liable for the actions of Phillips because she was acting in the course and scope of her employment.  (Doc. # 67, Third Am. Compl. ¶ 53).

is based on both Phillips' February 14, 2007 email and Wheelless' statements that Harper was a large and important client of Flowers and that Flowers handled all of his insurance.

## A.  Count III

Flowers' first contention is that Count III brings a promissory fraud claim—*i.e.* the failure to perform some future promised act—as opposed to a fraud claim relating to an existing fact and that NHIC must therefore establish an intent to deceive.  (Doc. # 66, at 14).  Alabama law provides causes of action for both fraud, also called legal fraud, and promissory fraud.  Under Alabama law, "fraud is the false representation of a *material existing fact* inducing reliance and causing damages."  *Green Tree Acceptance, Inc. v. Doan*, 529 So. 2d 201, 206 (Ala. 1988) (citing Ala. Code §§ 6-5-101 (1975) *et seq.*) (per curium) (emphasis in original).  Thus, to establish a prima facie case of fraudulent misrepresentation under Alabama law, a plaintiff must show "(1) that [the defendant] made a false misrepresentation, (2) that the misrepresentation involved a material [existing] fact, (3) that the [plaintiff] relied on the misrepresentation, and (4) that the misrepresentation damaged the [plaintiff]."  *AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008); *accord Eley v. Travelers Ins. Co.*, No. 2:09-cv-958-MEF, 2011 U.S. Dist. LEXIS 16528, at *29–30 (M.D. Ala. Feb. 18, 2011) (Fuller, C.J.); *AstraZeneca LP v. State*, 41 So. 3d 15, 26 (Ala. 2009).

There is no requirement of fraudulent intent when bringing a claim for fraud based upon misrepresentation of a material existing fact.  Ala. Code § 6-5-101

("Misrepresentations of material fact made willfully to deceive, or recklessly without

knowledge, and acted on by the opposite party, *or if made by mistake and innocently* and

acted on by the opposite party, constitute legal fraud.") (emphasis added); *see also Eley*,

2011 U.S. Dist. LEXIS 16528 at *28 ("[F]raud under Alabama law need not include an

intent to deceive or defraud." (citations omitted); *Burlington N. R.R. Co. v. Warren*, 574

So. 2d 758, 766–77 (Ala. 1990) ("This Court has long held that statements of fact made

recklessly, without knowledge, *or by mistake*, and acted upon, are actionable even

without fraudulent intent.") (citations omitted) (emphasis added); *Coaker v. Washington

County Bd. of Educ.*, 646 So. 2d 38, 42 (Ala. Civ. App. 1993) ("In Alabama, the legal

definition of fraud includes even innocent misrepresentations if the misrepresentation

concerns an existing material fact upon which the plaintiff relied, proximately resulting in

damage to him.  The good faith of a party in making a representation that later proves to

be false is immaterial; in the eyes of the law, the misrepresentation is as fraudulent as if it

had been intentional.") (citations omitted).

Promissory fraud, on the other hand, occurs by the failure to perform a

promise—*i.e.* the failure to perform some promised future act.  S*ee, e.g. Eley*, 2011 U.S.

Dist. LEXIS 16528 at *39 n.12; *Scott v. United of Omaha Life Ins. Co.*, 749 F. Supp.

1089, 1093 (M.D. Ala. 1990) (Hobbs, J.); *Brown-Marx Assocs., Ltd. v. Emigrant Sav.

Bank*, 703 F.2d 1361, 1370–71 (N.D. Ala. 1983).  In order to establish promissory fraud,

a plaintiff must also prove "that at the time the promise was made, there was an intent not

21

to perform the promised act."  *Green Tree Acceptance*,  529 So. 2d at 206 (citing Ala.

Code § 6-5-102; *Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 519 (Ala. 1983); *see*

*also Scott*, 749 F. Supp. at 1093 ("[U]nder Alabama law the failure to perform a  promise

is not itself sufficient to support a charge of fraud.  Absent any evidence from the plaintiff

that the representation was made with the intent to deceive, the fraud count fails.")

(citations omitted); *Brown-Marx*, 703 F.2d at 1370 ("[U]nder Alabama law failure to

fulfill promises does not give rise to actionable fraud unless it is alleged and proved that

the representations were made with intent to deceive and with no intent at the time the

representations were made to carry them out.  Failure to perform a promise is not of itself

adequate evidence of intent to support an action for fraud.") (citations omitted).  Here,

Flowers contend that Count III is a claim for promissory fraud because the

"representation made by Phillips was a representation to perform an act in the future."

(Doc. # 78, at 14).  Citing to NHIC's response to the motion for summary judgment,

Flowers argues that this promised future act was "'to have all communications regarding

the Policy go to Flowers and then for Flowers to mail it on to Harper.'"  (*Id.* (quoting

Doc. # 74, Pl's Response, at 26)).

    Here, the statements made by Phillips—*i.e.* that Flowers' handled of all of

Harper's business and personal insurance and that Harper preferred to have his mail sent

to Flowers—relate to existing facts.  These statements were either true or false *at the time*

*they were made.*  That is, either Flower's handled all of Harper's insurance at the time or

it did not and either Harper preferred his mail to go to Flowers at the time or he did not.

Statements promising to perform some future act cannot be deemed true or false at the

time they are made, but rather can only be rendered true or false by the promisor's later

performance of or failure to perform the promised act.  Phillips' statements are not

promises to act in the future, but rather are representations of facts relating to Flowers'

existing relationship to Harper and Harper's existing desire to have his mail sent to

Flowers.  *See Allstate Ins. Co. v. Hilley*, 595 So. 2d 873, 876 (Ala. 1992) (holding that an

insurance company's statement that, in the event of a fire, the insurance company "would

either rebuild the house, replace the house, or pay . . . $ 38,000" was "not a promise to act

in the future" but rather a representation "of present fact of [the insurance company's]

obligations under the insurance policy").  Flowers appears to argue that, because these

statements relating to existing facts implied a promise to forward the mail to Harper, then

the *only* claim that can be made is one for promissory fraud.  However, Flowers has not

pointed to, nor can this Court find, any support for the proposition that fraud is

transformed into promissory fraud when the statements about existing facts imply a

promise to perform in the future.  NHIC has presented sufficient evidence that it relied on

these explicit representations of existing fact when it agreed to Phillips' request to change

the mailing address and, thus, sent the policy to Flowers and not Blue Water.  This alone

is sufficient to support a claim for fraud.  Thus, NHIC need not establish an intent to

deceive to succeed on it's misrepresentation claim against Flowers, and Flowers is not

23

entitled to judgment as a matter of law based upon a failure to establish an intent to deceive.

**B.      Count IV**

With respect to Count IV, Defendants contend that the *only* reason Hodgens sent the policy to Flowers instead of Blue Water was because of the portion of Phillips' email requesting a change in the mailing address.  (Doc. # 66, at 16; *see also* ).  Thus, Defendants contend that NHIC's could not have relied upon Wheelless' statement in deciding to send the Policy to Flowers.  (*Id.*).  They further argue that "the misrepresentation claim based on the representation [in Phillips' email] that '[w]e handle all of this client's business and personal insurance' is not actionable" for this same reason.  (Doc. # 78, at 12–13 ("Hodgens . . . clearly and unambiguously stated that the ***only*** reason why he sent the policy to Flowers was because Phillips told him to change the mailing address.")).  Clearly, the Policy's address would not have been changed absent a request to do so, such as that found in Phillips' email.  The changing of the address and, thus, the subsequent mailing of the Policy to Flowers instead of Blue Water are the acts of reliance that allegedly caused damage to NHIC.  (Doc. # 67, Third Am. Compl. ¶ 63 ("In reliance on these representations, the Policy was sent to Flowers rather than to Blue Water.").  However, there is nothing before this Court which demonstrates that NHIC could not have relied upon *all* the cited statements when it decided to grant the request for a change of address.  Defendants confuse the acts of reliance—*i.e.* the granting of the

24

request to change the mailing address and the mailing of the Policy to Flowers—with the

misrepresentations that NHIC allegedly relied upon in making that act of reliance—*i.e.*

the statement by Wheelless and the whole of Phillips' email which allegedly contain

implicit misrepresentations of an agency relationship between Flowers and Harper.  Thus,

Defendants have failed in their burden to establish entitlement to judgment as a matter of

law based upon lack of reliance upon Wheelless' statement and Phillips' whole email.  To

the extent that Defendants argue failure to prove intent to deceive in promissory fraud

claims and lack of causation, this Court finds those arguments to be unpersuasive for the

reasons previously discussed.  As such, Defendants Motion for Summary Judgment,

(Doc. # 65), is due to be DENIED with respect to the misrepresentation claims contained

in Counts III and IV.

## III.    The Negligence Claim: Count II

To establish a claim of negligence under Alabama law, a plaintiff must show (1)

the existence of a duty; (2) the breach of that duty; (3) causation of the injury and (4)

damages.  *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009); *accord Fedonczak v. Grissom*,

No. 2:1–cv-61-MEF, 2011 U.S. Dist. LEXIS 9652, at *6 (M.D. Ala. Feb. 1, 2011) (Fuller,

C.J.).  A duty may arise by a common law duty—*i.e.* where Alabama law imposes a legal

duty on particular persons or classes of persons—or by voluntary assumption of a duty

where there was no initial legal duty.  *See Raburn v. Wal-Mart Stores, Inc.*, 776 So. 2d

137, 139 (Ala. 1999) ("While there is no *initial* legal duty on the part of a premises owner

to prevent injuries to business invitees resulting from criminal acts, Alabama law

recognizes the principle that liability to third parties can result from the negligent

performance of a voluntary undertaking.") (citation omitted); *see also Herston v.*

*Whitesell*, 374 So. 2d 267, 270 (Ala. 1979) ("One who volunteers to act, though under no

duty to do so, is thereafter charged with the duty of acting with due care.") (quotations

and citations omitted).  Here, Defendants contend that NHIC cannot establish the

existence of duty.  (*See* Doc. # 66, at 9–11).

Defendants first argue that NHIC must be alleging an Alabama common law

duty—*i.e.* not a voluntary assumption of a duty—because the negligence claim is separate

and distinct from the misrepresentation claims.  (Doc. # 66, at 9 ("[T]he duty alleged in

Count II is separate and apart from the Misrepresentation claims asserted in Counts III

and IV.  Thus, [NHIC] is apparently contending that Flowers owed it a duty in tort to

deliver the policy, regardless of whether Flowers ever represented to New Hampshire that

it would deliver the policy.")).  However, this argument misunderstands the differences

between the claims.  Although based upon the same facts, the misrepresentation claims

are separate legal theories from the negligence claim.  Under the misrepresentation

claims, regardless of whether Defendants had a duty to deliver the Policy to Blue Water,

NHIC argues that it was damaged from Defendants fraudulent misrepresentation that

Harper wanted his mail sent to Flowers and the implicit representation that Flowers was

Blue Water's agent.  The alleged reliance on these misrepresentations that caused damage

26

to the NHIC is that *the Policy was sent to Flowers and not to Blue Water*.  On the other

hand, the negligence claim asserts that Defendants' had a *duty to forward the Policy to

Blue Water* and that their failure to do so caused damage.  Nothing in the nature of these

theories of liability preclude NHIC from relying upon the same facts to establish them.

   Defendant also contends that NHIC has never before asserted a voluntary

assumption of duty and point out that the deadline for amendment of pleadings has

passed.  (Doc. # 78, at 15).  This assertion is simply incorrect.  NHIC's Second and Third

Amended Complaints clearly lay the basis for NHIC to assert that Defendants voluntarily

assumed a duty to deliver the Policy to Blue Water.  For example, paragraphs 37 and 38

of these amended complaints state, in pertinent part, the following:

> 37.    . . . [Defendants] received the Policy on behalf of the insurer
> and still owed an obligation, including an express and implied contractual
> obligation, and *a duty under Alabama law*, to deliver the Policy to the
> insured, Blue Water, such that the interests of the insurer, NHIC, would be
> protected.  *Defendants requested that the Policy be delivered to Defendants
> rather than directly to Blue Water and, at Defendants' request, Hodgens
> (NHIC's broker) and Defendants agreed that the Policy would be sent to
> and through Defendants would deliver the same to Blue Water.*  By their
> conduct, Defendants also implicitly agreed with NHIC, that Defendants
> would deliver the Policy to Blue Water.
> 38.    Defendants owed and *expressly assumed by their conduct*,
> including their statements to both Blue Water and NHIC, *a duty to deliver
> the policy to the insured* and NHIC is a direct beneficiary of Defendants'
> duty owed to NHIC under Alabama law and/or pursuant to express and
> implied agreements between Defendants and NHIC.

(Doc. # 67, Third Am. Compl. ¶¶ 37–38; *accord* Doc. # 35, Second Am. Compl. ¶¶

37–38).  The negligence claim found in Count II incorporates these paragraphs by

reference and further states that Defendants "as parties in the chain for solicitation, procurement, sale and delivery of the Policy to Blue Water, had a duty to exercise reasonable and due care to discharge their obligations inherent in such a transaction." (Doc. # 67, Third Am. Compl. ¶¶ 46–47; *accord* Doc. # 35, Second Am. Compl. ¶¶ 46–47).  Paragraphs 37 and 38 provide sufficient notice that Defendants were parties in the chain for delivery of the Policy because they specifically requested that the Policy be sent to them—*i.e.* because they allegedly voluntarily assumed to receive the Policy and forward it to Blue Water.

Defendant makes no other argument with respect to a voluntary assumption of a tort duty.  Furthermore, there is sufficient evidence to find that Defendants voluntarily assumed a duty to send Harper's mail to him by requesting a change in the mailing address and by agreeing to accept the mail.  This Court, therefore, need not consider the argument of whether there is an initial legal duty under Alabama common law.  As Defendants have not established that they are entitled to judgment as a matter of law based on the lack of a duty to deliver the Policy, the summary judgment motion is due to be DENIED on the negligence claim.[16]

---

[16]  In their reply, Defendants appear to argue that there was no breach of a duty to deliver the Policy because Phillips reasonably did not forward the email containing the Policy to Blue Water as she was told it contained a binder.  (Doc. # 78, at 3).  However, Defendants did not argue this issue in their initial brief, and it is well settled "that a party cannot argue an issue in its reply brief that was not preserved in its initial brief." *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1466 n. 16 (11th Cir. 1987); *accord Belfast v. Upsilon Chapter of Phi Kappa Alpha Fraternity*, 267 F. Supp. 2d 1139, 1147–48 (M.D. Ala. 2008) (Fuller, C.J.).

Furthermore, even if the Court were to consider this argument, it would not entitle

**IV.    The Breach of Contract Claim: Count I**

In Count I, NHIC contends that Defendants "expressly and/or impliedly agreed to deliver the Policy" to Blue Water and that "[t]he failure of Flowers and Wheelless to deliver a copy of the Policy to Blue Water constituted a breach of such express or implied contract."  (Doc. # 67, Third Am. Compl. ¶¶ 43–44).  To establish a breach of contract claim under Alabama law, a plaintiff must show "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages."  *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citations omitted); *accord DeVenney v. Hill*, 918 So. 2d 106, 117 (Ala. 2005) (citations omitted).

Where there is no valid contract binding the parties, the general rule is that "one not a party to a contract or in privity with a contract cannot sue for its breach."  *Dunning v. New England Life Ins. Co.*, 890 So. 2d 92, 97 (Ala. 2003).  However, an exception exists where the plaintiff is a third-party beneficiary to a contract between the defendant

_____

Defendants to judgment as a matter of law for two reasons.  First, the issue of breach of a duty is "normally resolved by the jury."  *Jones Food Co. v. Shipman*, 981 So. 2d 355, 361 (Ala. 2006).  Here, a reasonably jury could find no breach based upon Phillips being told the email contained a binder and not the Policy.  However, that same reasonable jury could also find that Phillips was unreasonable in not checking the attachment to see what it held.  Second, this argument fails to address the issue of the hard copy allegedly mailed to Flowers on February 15, 2007.  Defendants admit that there is a jury question as to whether Hodgens mailed the hard copy on that day.  (Doc. # 78, at 12).  Regardless of whether Phillips was reasonable in not forwarding the February 13th email to Blue Water, a reasonable jury could find that Hodgens mailed the Policy on February 15, 2007, that Defendants received it, and that Defendants breached their duty by failing to deliver the hard copy to the Blue Water.

and another person or entity.  "A party seeking to recover in contract as a third-party beneficiary must establish that the contracting parties intended, at the time of the contract, to bestow a direct, as opposed to incidental, benefit on him."  *Ex parte Scott Paper Co.*, 634 So. 2d 546, 548 (Ala. 1993) (citations omitted); *accord Surrett v. TIG Premier Ins. Co.*, 869 F. Supp. 919, 924 (M.D. Ala. 1994) (DeMent, J.) ("[T]o prevail on this [third-party beneficiary] theory, the plaintiff must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached.") (citations and quotations omitted).  Here, Defendants contend that there is no contract between the parties and no contract to which NHIC was a third-party beneficiary. The issue of the existence of a contract is a question of fact.  *Indus. Maint. Cleaning Contractors, Inc. v. Sales Consultants of New Orleans, Inc.*, 342 So. 2d 377, 379 (Ala. Civ. App. 1977) (holding that where there is conflicting evidence as to the making of a contract, "[t]he existence of a contract . . . is a question of fact") (citing *Maryland Cas. Co. v. First Nat'l Bank of Eufaula*, 276 Ala. 575 (1964)).

In its initial brief in support of the summary judgment motion, Defendants contended that "[t]here is no contract between [NHIC] and Flowers."  (Doc. # 66, at 12). Although Defendants cite no support for this contention in their argument section, they are apparently relying upon the testimony of NHIC's corporate representative, Smith. Defendants contend that Smith admitted that there was no contract or agreement between

the parties.  (Doc. # 66, at 4 (citing Doc. # 66 Ex. 2, NHIC Depo. 79:3–81:3)).  However, as NHIC points out, a close look at that testimony reveals that it was conceded that there was no "formal written agreement" between the parties and that this statement excluded the emails at issue presently before this Court.  (Doc. # 66 Ex. 2, NHIC Depo. 80:18–81:2).  Thus, this admission does not preclude NHIC from bringing a breach of contract claim arising out of an alleged contract evidenced by those emails.

In their reply brief, Defendants then contend that there is no contract between the parties because "there is no direct communication between Phillips and [NHIC]—only through Hodgens."  (Doc. # 78, at 11).  Defendants cite no support, nor can this Court find any, for the proposition that the parties to a contact *must* have direct communication in order to form a contract.  The Court notes that it is quite possible that two parties could form a contract through intermediaries and never actually directly communicate with each other.[17]  All that matters is that the parties satisfy the requirements for entering into a contract under Alabama law.  The Court further notes that Defendants *do not even mention what the requirements are for formation of a contract under Alabama law*.[18]  A

_____

[17]  Indeed, there is no evidence before this Court that Blue Water had direct communication with NHIC, and yet all parties agree that there was an insurance contract between them.

[18]  To the extent that Defendants appear to rely upon the case of *RSUI v. Willis of Alabama, Inc.*, initially cited by NHIC, for the proposition that "direct and repeated contact and dealings with an insurer" are required for a contract to form, this Court notes that this portion of *RSUI* was discussing the *scope* of the contract between the parties, not the existence of a contract.  No. 07-0142-WS-B, 2007 U.S. Dist. LEXIS 64930, at *9–10 (S.D. Ala. Aug. 29, 2007) (holding that, assuming a contract for the defendant to deliver the binder, there was sufficient allegations of "multiple communications" about certain exclusions between the parties to support a claim that the

bald assertion that a contract cannot exist between the parties because of some supposed

requirement of direct communication, without any support for such an assertion, is

completely insufficient to satisfy Defendants' burden on a motion for summary judgment,

particularly where they do not even state what the actual requirements are for formation

of a contract under Alabama.  As such, Defendants have failed to demonstrate that they

are entitled to judgment as a matter of law based upon the lack of a contract between the

parties.[19]  Thus, the motion for summary judgment is due to be DENIED with respect to

the breach of contract claim of Count I.[20]

_____

contract included a duty to deliver the binder with those exclusions).  Similarly, here, assuming that
there is a contract between the parties, there is sufficient evidence that the contract included a duty
to deliver the Policy to Blue Water.

   [19]  Because Defendants have failed to establish that no contract exists between the parties,
this Court need not decide the issue of whether NHIC is a third-party beneficiary of a contract
between Defendants and Harper or Blue Water.

   [20]  This Court notes that Defendants rely upon the cases of *Gulf Gate Management Corp. v.
St. Paul Surplus Line Ins. Co.*, 646 So. 2d 654 (Ala. 1994) and *Capital Assurance Co., Inc. v.
Johnson*, 578 So. 2d 1263 (Ala. 1991), for the proposition that there is no common law tort duty in
this case.  (Doc. # 66, at 10).  They also rely on these cases for the proposition that there is no
contractual duty to NHIC.  (Doc. # 78, at 12).  Both arguments are without merit as these cases are
irrelevant to the issues before this Court.
   In *Gulf Gate*, an independent broker agency contacted the plaintiff with respect to procuring
insurance.  The insured believed the policy had issued and later filed a claim, which the insurer
denied on the basis that no policy had issued.  The insured sued the insurer for breach of contract,
bad faith failure to pay, misrepresentation, and negligent failure to procure insurance.  The theory
presented by the allegedly insured plaintiff was that the insurer would be "bound to provide coverage
when its agent [the broker agency] has acted negligently in failing to procure it." *Gulf Gate*, 646 So.
2d at 659.  The factual dispute at issue was whether an agent at the broker agency sent a
memorandum to the insurer to bind coverage.  The court held that if the agent had failed to do so,
then the broker agency would clearly be liable for his actions.  However, the broker agency's liability
"could be imputed to [the insurer] *only if* [the broker agency] was acting as an agent for [the
insurer]." *Id.*  Thus, the court held that "an insurer's liability for the fraud of an independent agent
or broker is predicated solely upon actual or apparent authority conferred upon the agent/broker by

V.      **Damages**

As part of its damages for each claim, NHIC seeks to recover the "attorney's fees, expert witness fees, and costs assessed/awarded to Blue Water" in the declaratory judgment action. (Doc. # 67, Third Am. Compl. ¶¶ 45(c) (Count I), 50(c) (Count II), 57(c) (Count III), 64(c) (Count IV)). Defendant contends that NHIC is not entitled to attorneys' fees. Under Alabama law, "the general rule is that attorneys' fees or expenses are not recoverable as damages, in absence of a contractual or statutory duty." *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1066 (Ala. 1978). However, an exception exists "where the natural and proximate consequence of the defendant's wrongful act causes the plaintiff to become involved in litigation with a third person, attorney's fees and other expenses incurred in such litigation may be recovered as damages." *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1066 (Ala. 1978). This requires a showing of three elements by the plaintiff: (1) that

———————————————

the insurer to make representations on the insurer's behalf." *Id.* Because there was no evidence that the insurer acted as the broker agency's principal under agency law, the liability of the broker agency could not be imputed to the insurer.

Similarly, *Capital Assurance* involved an indemnity claim brought by the insurer against an independent agency. The court held that "in order to assert an indemnity claim . . . [the insurer] must first prove that the agency acted under actual or implied authority on its behalf when the agency procured [the policy]." Again, this case centers around whether an independent agency is an agent of the insurer under agency law.

The instant action does not concern any issue regarding whether Flowers was an agent of NHIC under agency law—whether for imputing liability from the agent to the principal or requiring the agent to indemnify the principal. Indeed, no claim has been made that Flowers acted as NHIC's agent. Rather, the claims at issue here are whether Flowers owed a duty *in tort or under contract* to deliver the Policy to the insured. Simply put, *Gulf Gate* and *Capital Assurance* are not at all relevant to the issues before this Court.

"[t]he plaintiff . . . incurred attorneys' fees in the prosecution or defense of the prior

action"; (2) that "[t]he litigation must have been against a third party and not against the

defendant in the present action"; and (3) that "[t]he plaintiff must have become involved

in such litigation because of some tortious act of the defendant."  *Id.*

Defendant does not address these three elements, but rather argues an exception to

the exception under Alabama law:

> In an action by an insurance company against its agent [under Alabama law]
> to recover the amount which it had been compelled to pay on a policy issued
> by the agent without authority, the plaintiff's claim of attorney's fees for
> defending the suit against it on its policy was properly stricken.

*Casualty Co. v. Musgrove*, 205 F.2d 9, 11 (5th Cir. 1962)[21] (explaining Alabama law as

held in *Phoenix Ins. Co. v. Seegers*, 68 So. 902, 904 (Ala. 1915) (holding that, where an

insurance agency sued its agent for issuing a policy without authorization, "the court

properly sustained a motion to strike that part of the first count, claiming attorney's fees

for defending suit against the company on the insurance policy")).  However, while the

exception to the exception in *Musgrove* and *Seegers* concerns suits by an insurance

agency *against its own agent*, as previously discussed, this suit does not involve any claim

that Defendants were agents of NHIC.  Because Defendants have failed to establish that

the rule in *Musgrove* and *Seegers* applies and because there is sufficient evidence before

this Court by which a reasonable jury could find NHIC is entitled to recover these

---

[21]  In *Bonner v. City of Prichard, Alabama*, the Eleventh Circuit adopted as binding all Fifth
Circuit decisions prior to the close of business on September 30, 1981.  661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc).

attorneys' fees, the summary judgment motion is due to be DENIED with respect to the attorneys' fees.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion for summary judgment, (Doc. # 65), is DENIED.

DONE this the 5th day of May, 2011.

<u>              /s/ Mark E. Fuller              </u>
CHIEF UNITED STATES DISTRICT JUDGE